UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CANDACE ERMELS,<br><br>                Plaintiff,<br><br>      v.<br><br>SHORELINE SCHOOL DISTRICT,<br><br>                Defendant. | CASE NO. 2:20-cv-00893-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

       Defendant Shoreline School District ("District") moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. 78. In this action, Plaintiff Candace Ermels contends the District violated Section 504 of the Rehabilitation Act of 1973 ("Section 504") and the American with Disabilities Act ("ADA") when it failed to provide her son ("Student"), with a free appropriate public education ("FAPE"), because he is African American and disabled. Dkt. 8.

       After careful review of the District's motion for judgment on the pleadings, Plaintiff's response, the District's reply, and balance of the record, the undersigned recommends that the motion for judgment on the pleadings be granted.

<u>BACKGROUND</u>

       This case involves educational decisions, which were previously challenged and rejected in separate due process administrative proceedings held pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), before an Administrative Law

REPORT AND RECOMMENDATION - 1

Judge ("ALJ") with the Office of Superintendent of Public Instruction ("OSPI"). *See, e.g.,* OSPI Cause No. 2019-SE-0090; OAH Docket No. 06-2019-OSPI-00796. Plaintiff's complaint incorporates by reference the Order entered by the ALJ in one of these proceedings. *See* Dkt. 8, p. 4; Dkt. 78, Exhibit A.

In a separate administrative action, the OSPI confirmed that the District must perform an age-appropriate transition assessment (the "Evaluation") before Student could again receive special educational services (after Plaintiff terminated and then requested reinstatement of those services). Plaintiff appealed the ALJ's decision in *C.M.E. O/B/O W.P.B. v. Shoreline School District*, Case No. 2-19-2019 RAJ-BAT ("Administrative Appeal"). This Court affirmed the ALJ's decision overriding Plaintiff's refusal to consent to the District's proposed Evaluation of Student, stating in part:

> Plaintiff also asserts that the District has "denied the Student access to all Special Education to date." However, the record shows that it was Parent's revocation of her consent for Student to receive special education services (knowing that this would change Student's status to a general education student), and Parent's continued refusal to consent to the District's proposed evaluation, that have denied Student access to the special education services he requires. On the other hand, the District is attempting to provide special education services to Student by appropriately utilizing the consent override procedures of the IDEA. *Id.*, Dkt. #47 at p.16, n.6 (internal citations omitted).

Dkt. 47 (Report and Recommendation "R&R"); *see also*, Dkt. 51 (Order Adopting); Dkt. 37 (Administrative Record "AR"). Plaintiff has appealed that decision, and the matter is currently pending before the Ninth Circuit Court of Appeals, No. 21-35538.

In this case, Plaintiff is not appealing any prior decision by the ALJ or this Court. Instead, she asserts additional causes of action for violation of Section 504 and the ADA based on the same facts. Plaintiff previously attempted to bring these claims before the ALJ, but they were dismissed for lack of jurisdiction. Dkt. 79, p. 4. Plaintiff also attempted to amend her complaint

REPORT AND RECOMMENDATION - 2

1  in the Administrative Appeal to include these claims, but her motion for leave to amend was
2  denied. *See* Dkt. 28, pp. 3-5 in Case No. 2:19-cv-02019.
3  A.     Plaintiff's Allegations – Dkt. 8 (Complaint)
4        Plaintiff transferred Student from Shorewood High School to Shorecrest High School for
5  the 2018-2019 school year because Student's academic progress was declining "with no
6  intervening event or illness." Plaintiff repeatedly refused Student's placement in a community-
7  based transition program because it was not in line with his academic levels and plan to obtain a
8  college trade certificate. Dkt. 8, ¶¶ 2-3. Plaintiff repeatedly requested Student be allowed to
9  remain in high school for specially designed instruction for academic skill acquisition until the
10 age of 21 years, but the District denied her requests, stating that Student could only attend
11 District high school for 4 years. *Id.*, ¶ 4.
12        Plaintiff alleges "[t]hrough predetermination, the District discriminated against the
13 Student based on age and number of years in high school as well as race." *Id.*, ¶ 5.
14        Plaintiff further alleges that after she removed Student to Homeschool/Private placement
15 on February 1, 2019, the "District deliberately retaliated against the Student…". *Id.*, ¶¶ 6-7.
16        On June 20, 2019, Parent revoked her consent for Student to be a full-time student in
17 Special Education and requested "504 accommodations while awaiting a new Initial Evaluation
18 as a homeschool student." *Id.*, ¶¶ 8-9. The District denied her request for "504 accommodations"
19 "without explanation" in "deliberate discrimination and retaliation due to the revocation of
20 Parental Consent of Special Education services." *Id.*, ¶ 11-12.
21        Plaintiff filed a complaint with the United States Department of Education, Office of
22 Civil Rights on July 4, 2019 and was granted permission to file a civil complaint. *Id.*, ¶ 12. On
23 July 8, 2019, Plaintiff sent a letter to the District "which outlined the deliberate discrimination

REPORT AND RECOMMENDATION - 3

and retaliation by the [ ] District of a disabled, African American student." Plaintiff requested a "504 Discrimination Investigation" pursuant to the District's board policy, but the District conducted only an internal investigation of its own practices. *Id.*, ¶¶ 13-15.

On July 11, 2019, Plaintiff requested a "targeted Initial Evaluation as a "Homeschool/ Parentally Placed Private student for the Specially Designed Instruction." *Id.*, 16. Plaintiff again requested "504 accommodations." Plaintiff alleges that "Student requires 504 accommodations for his General Education courses." *Id.*, ¶¶ 17-18.

On September 24, 2019, the District Director of Student Services Amy Vujovich denied Plaintiff's request to "develop and receive 504 accommodations unless [Plaintiff] signed the consent for the Age Appropriate Transition Assessment." Plaintiff alleges this was done to retaliate against Plaintiff for refusing to consent and that the District's subsequent request for a due process hearing was "an act of deliberate retaliation for the revocation of Parental Consent of the prior IEP." *Id.*, ¶¶ 19-21.

Plaintiff also alleges the District deliberately discriminated against Student by conducting the Evaluation in January 2019, despite the existence of a current Evaluation. Plaintiff alleges further that the District denied Student a FAPE despite conflicting evidence at the April 16, 2019 hearing as to the nature of Student's employment goals. *Id.*, ¶¶ 22-25.

B.   Prior Proceedings

Some background facts are helpful to understand and place Plaintiff's claims in this case in context.[1] In summary, Student received special education services from the District throughout elementary school, middle school, and four years of high school. In January 2019, the

---

[1] The background facts are summarized by the Court from the AR filed in the Administrative Appeal, Dkt. 34.

REPORT AND RECOMMENDATION - 4

1  District's Individualized Education Plan ("IEP") provided Student would move into the District's
2  community-based transition program at Shoreline Community College ("Transition Program")
3  after he completed high school. Plaintiff disagreed with this decision and wanted Student to
4  continue his education in a high school academic setting in the Fall of 2019. The District rejected
5  Plaintiff's proposal.
6      In February 2019, Plaintiff decided to homeschool Student on a part-time basis and
7  believed this would allow her to become Student's "IEP Case Manager of record" and to reject
8  those portions of the IEP with which she disagreed. On February 5, 2019, the District
9  acknowledged Plaintiff's decision to homeschool Student on a part-time basis and implemented
10 the part-time schedule as Plaintiff requested.
11     On June 20, 2019, Plaintiff revoked her consent for Student to receive special education
12 services. Plaintiff acknowledged that her decision would return Student to his prior status as a
13 general education student. Approximately three weeks later, Plaintiff requested that the District
14 evaluate Student to receive special education services. She acknowledged that Student's last
15 evaluation was two years old and that "a new evaluation [wa]s warranted." A team meeting
16 followed (which included Plaintiff) to plan the scope of Student's initial evaluation for special
17 education services and Plaintiff was asked to give her consent to evaluate Student for special
18 education services. Plaintiff signed and returned the consent form but with several modifications,
19 including her refusal to consent to the proposed Evaluation and interview of Student. In
20 response, the District revised the evaluation description to incorporate several of Plaintiff's
21 requests, but the District declined to eliminate the requirement to evaluate and interview the
22 Student.
23

REPORT AND RECOMMENDATION - 5

1    Plaintiff continued to refuse to consent to the Evaluation and argued that homeschool
2  students were not required to perform transition activities. The District explained that the
3  Evaluation was a procedural requirement of the IDEA and offered to pay for an outside provider
4  to conduct it. Plaintiff refused this offer and continued to withhold her consent to the Evaluation.
5  The District considered Plaintiff's conditional consent to be a refusal of consent because her
6  conditions prevented the District from conducting a complete, appropriate evaluation as required
7  by the IDEA.

8    As noted above, the OSPI confirmed that the District must perform the Evaluation before
9  Student could again receive special educational services after Plaintiff terminated and then
10 requested reinstatement of those services. The OSPI overrode Plaintiff's refusal to consent to
11 allow the District to comply with the requirements of the IDEA. This Court affirmed the ALJ's
12 decision and Plaintiff has appealed that decision. *See* Dkts. 47 and 51; Ninth Circuit Court of
13 Appeals, No. 21-35538.

## LEGAL STANDARDS AND PRELIMINARY MATTERS

A.  <u>Judgment on the Pleadings - Rule 12(c)</u>

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

The standard governing a motion for judgment on the pleadings is "substantially identical" to the standard for assessing a Rule 12(b)(6) motion as set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Chavez v. United States*, 683 F.3d

REPORT AND RECOMMENDATION - 6

1102, 1108 (9th Cir. 2011). Under this standard, to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a complaint need not contain detailed factual allegations, a plaintiff cannot rely on labels and conclusions, or a formulaic recitation of the elements of a cause of action to demonstrate entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 195, 1964-65 (2007). The factual allegations "must be enough to raise a right of relief above the speculative level." *Id*. at 1965. The complaint must contain facts that "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

A pro se litigant's complaint is still evaluated under the *Iqbal/Twombly* pleading standards. *French v. Washington State Dep't of Health*, No. C15-0859JLR, at *6 (W.D. Wash. 2017). Courts may not liberally construe a pro se litigant's filings to "'supply essential elements of the claim that were not initially pled.'" *Id*. (quoting *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)).

B.  <u>IDEA, Section 504 and Title II of the ADA</u>

There are three major overlapping pieces of federal legislation applicable when a child alleges that their school has discriminated against them because of disability—the IDEA, Section 504 of the Rehabilitation Act of 1973, and Title II of the ADA. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909-910 (9th Cir. 2020).

REPORT AND RECOMMENDATION - 7

The IDEA provides federal funding for the education of students with disabilities, conditioning that funding upon state and local compliance with procedural and substantive requirements for the delivery of a FAPE to each eligible student, including specially designed instruction and related services to meet each student's unique needs. *Id*. at 910; *see also* 20 U.S.C. § 1400.

The Rehabilitation Act more broadly focuses on the provision of state services to individuals with disabilities. *McIntyre*, 976 F.3d at 911. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504's implementing regulations gauge the adequacy of services provided to individuals with disabilities by comparing those services to those provided to individuals who are not disabled. *McIntyre*, 976 F.3d at 911.

Title II of the ADA was modeled after Section 504, and similarly provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination of any such entity." *Id*.; 42 U.S.C. § 12132.

C.    Preliminary Matters

   1.    Motion to Strike – Dkt. 81

Defendant moves to strike Plaintiff's Declaration and accompanying exhibits (Dkt. 80) because review of a Rule 12(c) motion is based upon the complaint and not on external evidence. Dkt. 81. Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, as well documents attached to the complaint, documents incorporated by reference in

the complaint, and matters of judicial notice, unless the Court elects to convert the motion into one for summary judgment. *Yakima Valley Mem'l Hosp. v. Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because a motion brought pursuant to Fed. R. Civ. P. 12(c) challenges the sufficiency of the pleadings, the Court is not permitted to consider external evidence in deciding such motion. *Gerow v. Washington*, 2008 WL 4610324 (W.D. Wash. 2008).

Plaintiff's complaint incorporates by reference the ALJ's order in OSPI cause number 06-2019-OSPI-00796. *See* Dkt. 8, p. 4. Therefore, the Court may consider that Order. Dkt. 78, Exhibit A. The Court may also take judicial notice of administrative proceedings. Under Rule 201, administrative agency records, including decisional documents, are subject to judicial notice. *See* Fed. R. Evid. 201(c)(2). Judicial notice establishes only that these documents are as they are; it does not establish the correctness of any determinations therein. *See e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("… when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")

The District's motion to strike is granted. If the Court does review material outside of the pleadings, the Court will specifically state that it is taking judicial notice of certain material.

  2. <u>Request for Discovery</u>

Plaintiff argues that she should be allowed to develop the nature of her claims through further discovery and the introduction of evidence at trial. Plaintiff also suggests that the District cannot move for judgment on the pleadings until after discovery has been completed and that discovery in this case is ongoing. Dkt. 79, pp. 6-7, 9. According to the District, it has responded to and produced documents responsive to Plaintiff's sole discovery request, it does not believe

there are additional sources of information relevant to this case, and it does not intend to seek discovery from Plaintiff. Dkt. 73, Baisch Decl. Ex. B-4.

More importantly, there is no requirement that discovery be completed before a party my move for judgment on the pleadings. In fact, the federal rules require that a complaint contain sufficient allegations of underlying facts to state a claim for relief. In other words, the complaint must be able to stand alone. A deficient complaint will not otherwise survive based on the notion that if discovery is permitted, the complaint would be supported because the Court may look *only* at the "facts alleged in the complaint." *Chavez*, 683 F.3d at 1108. The District's motion is not premature and additional discovery is not required before the Court may adjudicate the motion.

### 3.    Denial of Motion to Amend in Administrative Appeal

Plaintiff argues that her Complaint should not be dismissed because this Court "previously has ruled that the claims in this matter were to be filed as a new separate case." Dkt. 79, p. 6. Plaintiff overstates the nature of the Court's ruling.

In the Administrative Appeal, Plaintiff sought leave to amend her complaint to include ADA and Section 504 claims. The Court denied leave for the amendment for various reasons, including that the amendment would increase costs, cause delay, and unduly complicate the prompt and fair adjudication of the administrative appeal, which implicated a purely legal question (*i.e.,* whether the IDEA requires the District to conduct the Evaluation). Dkt. 28, pp. 3-5 in Case No. 2:19-cv-02019.

The Court made no substantive ruling on the merits or plausibility of Plaintiff's proposed ADA or Section 504 claims but merely held that inclusion of the claims within an administrative appeal was not in the best interests of the Student, parties, or the Court. The Court also noted that while the IDEA does not foreclose claims under the ADA and § 504, so long as they are

REPORT AND RECOMMENDATION - 10

factually and legally distinct from an IDEA claim, the general principles of issue preclusion may be applied to preclude any redundancies. *See* Dkt. 28, p. 6 in Case No. 2:19-cv-02019. Thus, while Plaintiff was free to file a separate complaint, that complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

## DISCUSSION

A *prima facie* claim under either Section 504 or the ADA requires the same elements: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff was denied a reasonable accommodation that is necessary to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance. *McIntyre*, 976 F.3d at 912. Conclusory assertions that a plaintiff has been discriminated against are insufficient to state a claim to relief that is plausible on its face. *See e.g.*, *Whitaker v. Panama Joes Invs. LLC*, 840 F. App'x 961, 964 (9th Cir. 2021) (unpublished) (restaurant patron's complaint failed to state that the restaurant violated the ADA because he failed to identify the specific deficiencies preventing him from fully accessing the restaurant); *Heyer v. Governing Bd. Of Mt. Diablo Unified Sch. Dist.*, 521 Fed. App'x 599, 601 (9th Cir. 2013) (unpublished) (plaintiff failed to plead a plausible claim of discrimination because there were no factual assertions that plaintiff was replaced by a person of another race or a substantially younger employee with equal or inferior qualifications).

A.  Section 504 Claims

Plaintiff alleges that Student was "denied 504 accommodations," and that the District failed to provide "related aids and needed services for the Student to participate appropriately in any regular education program." Dkt. 8 at pp. 4, 7. Plaintiff's allegations focus on her request for Section 504 accommodations *after* she revoked her consent for Student to receive special

REPORT AND RECOMMENDATION - 11

education services from the District. However, "a parent may not bypass the IDEA's administrative procedures by voluntarily revoking consent under the IDEA and then recasting their grievances under § 504 and the ADA." *Lamkin v. Lone Jack C-6 Sch. Dist.*, No. 11-CV-1072-DW-W (W.D. Mo. Mar. 1, 2012) (unpublished); *N.B.F. v. Santa Monica-Malibu Unified Sch. Dist.*, 2014 U.S. Dist. LEXIS 199591 (relying on *Lamkin* to hold that parents could not utilize Section 504 of the Rehabilitation Act to obtain services available under the IDEA without first exhausting the administrative procedures of the IDEA); *E.D. v. Palmyra R-1 Sch. Dist.*, 2017 WL 6316680; *see also* 34 C.F.R. § 104.33(b) ("Implementation of an [IEP] developed in accordance with the [IDEA] is one means of meeting the standard" of Section 504).

By rejecting services offered under the IDEA, the parent is essentially rejecting services that would be offered under Section 504. *Lamkin*, (citing *Letter to McKethan*, 25 IDELR 295 (Dec. 31, 1996), Doc. 12-1, p. 8). In this case, Plaintiff acknowledges that she revoked consent for Student to receive special education services. Dkt. 8, p. 4. Plaintiff then asked the District to continue providing some or all of those services to Student under a Section 504 plan. *Id*. Here, as in *Lamkin*, Plaintiff's revocation of consent under the IDEA was tantamount to revocation of services under Section 504.

Plaintiff argues the Court should depart from the holding in *Lamkin* and hold that the District was obligated to develop a Section 504 plan for Student following Plaintiff's revocation of consent for services under the IDEA. Dkt. 79, p. 8. Even if this Court were to depart from the *Lamkin* holding, Plaintiff's complaint does not establish entitlement to relief because she has provided no factual allegations to support her claim. Plaintiff does not allege what specific accommodations she requested and what specific accommodations the District did not provide. Plaintiff appears to suggest that the accommodation at issue was her request to enroll Student in

REPORT AND RECOMMENDATION - 12

specific special education classes. Dkt. 78, p. 2. However, as has been previously established by the ALJ and this Court, the District could not provide Student special education services and accommodations due to Plaintiff's continued refusal to consent to the Evaluation. *See also*, U.S. DEP'T OF EDUC. OFFICE OF CIV. RIGHTS, Protecting Students with Disabilities: Frequently Asked Questions About Section 504 and the Education of Children with Disabilities (last updated January 10, 2020)[2] ("[a] school district must evaluate a student prior to providing services under Section 504," and "[s]chool districts may use the same process to evaluate the needs of students under Section 504 as they use to evaluate the needs of students under the IDEA.")

Plaintiff does not dispute that she revoked her consent for Student to receive special education services. Dkt. 79, pp. 2-3. Given that Plaintiff refused to consent to an evaluation of Student to receive special education services, the District was prohibited from providing Student special education classes. *See* 20 U.S.C. § 1414(a)(1)(D)(ii); *WAC 392-172A-0300; C.M.E. O/B/O W.P.B.*, Case No. 2:19-cv-02019-RAJ-BAT. The administrative record and the Administrative Appeal reflect that the District attempted to obtain Plaintiff's consent to the Evaluation on multiple occasions and when she failed to consent, the District utilized the due process hearing procedures of the IDEA to override Plaintiff's denial of consent so that Student could be evaluated and receive special education services. *See C.M.E. O/B/O W.P.B.*, Case No. 2:19-cv-02019-RAJ-BAT at Dkt. 47, p. 16 n. 6 ("the record shows that it was Parent's revocation of her consent for Student to receive special education services (knowing that this would change Student's status to a general education student), and Parent's continued refusal to consent to the District's proposed evaluation, that have denied Student access to the special education services

---

[2] Available at https://www2.ed.gov/about/offices/list/ocr/504faq.html.

REPORT AND RECOMMENDATION - 13

he requires.")

By complying with the IDEA's procedures of proposing an appropriate evaluation of Student and seeking to override Plaintiff's consent when she refused to provide it, the District has complied with Section 504. Therefore, the undersigned recommends that the Court grant the District's motion for judgment on the pleadings on Plaintiff's Section 504 claims.

B.      ADA Claim

The undersigned finds the Complaint is similarly deficient as to Plaintiff's ADA claim. Plaintiff fails to support her claim with factual allegations and instead, simply alleges:

> Shoreline School District, through its administrators, agents, and employees, excluded the Student solely on the basis of his disability from participation in and denied to the Student the benefits of the services, programs, and activities at the public school to which he was qualified for in violation of the American's with Disabilities Act, 42 U.S.C. § 12132 for the time period of the 2017-2018 school year starting September 5, 2017, the 2018-2019 school year, and the 2019-2020 school year, as well as the school years through this Court's final decision.

Dkt. 8, p. 7. Plaintiff cannot rely exclusively on conclusory allegations or formulaic recitations of the elements of her ADA claim. Rather, Plaintiff must allege facts describing what programs or activities Student was denied access to *because* of his disability – other than the special education services denied him because of Plaintiff's refusal to consent to the Evaluation required under the IDEA.

Plaintiff seeks relief "for the time period of the 2017-2018 school year starting September 5, 2017, the 2018-2019 school year, and the 2019-2020 school year, as well as the school years through this Court's final decision." Dkt. 8, p. 7. But Plaintiff alleges no facts relating to the September 5, 2017 date or for services during the 2017-18 school year. *See* Dkt. 8. The first factual allegations in the Complaint are dated February 1, 2019. *Id.*, p. 4. Thus, Plaintiff has failed to allege any viable claims arising prior to February 1, 2019.

REPORT AND RECOMMENDATION - 14

Additionally, and to the extent Plaintiff seeks relief for "the school years through this Court's final decision," (see Dkt. 8, p. 8), Plaintiff has failed to plead any facts showing the Student is eligible to receive public educational services in future school years. Student is presently more than 21 years old and is no longer eligible to receive special education services under the IDEA or access a program of basic education under Washington State law as of the conclusion of the 2020-21 school year. *See* Dkt. 62, p. 2 (identifying Student's date of birth); 34 C.F.R. § 300.102; WAC 392-172A-02000; RCW 28A.150.220(5)(a).

Based on the foregoing, the undersigned recommends that the District's motion for judgment on the pleadings on Plaintiff's ADA claims be granted.

C.  Retaliation Based on Assertion of Rights Under Section 504 and/or the ADA

To state a claim of retaliation under either Section 504 or the ADA, Plaintiff must show that (1) she engaged in protected activity, (2) that she was subject to adverse action, and (3) there was a causal connection between the protected activity and the adverse action. *S.L.-M., ex rel. Liedtke v. Dieringer Sch. Dist. No. 343*, 614 F. Supp. 2d 1152, 1162 (W.D. Wash. 2008); *See also Kolb v. Turner*, 2008 WL 5478575 (E.D. Cal. 2008) (incorporating the standard for analyzing ADA employment retaliation claim in *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)).

Plaintiff's complaint sufficiently pleads the first prong of a retaliation action. Advocating for her son to receive special educational services constitutes protected activity under the ADA and Section 504. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir.2009). However, Plaintiff has failed to plead sufficient factual content to allow this Court to draw the reasonable inference that the District retaliated against Plaintiff or that such retaliation was *because* she was advocating for her son.

An adverse action is one that is "'sufficient to deter a person of ordinary firmness from exercising his rights,'" *S.L.-M.*, 614 F. Supp. 2d at 1162 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Not every action taken by a defendant that impacts a plaintiff who has engaged in protected activity constitutes adverse action. *Kolb*, 2008 WL 5478575, at *14. Adverse action cannot be trivial in nature. *Id*. Additionally, to prove causation, the plaintiff must show that the adverse action was taken "because" of the plaintiff's protected activity, meaning that it was a "motivating factor" for the adverse action. *Id*. (quoting *Head v. Glacier NW. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)).

The purported "adverse" actions Plaintiff identifies in her complaint are the District "forcing" her to consent to the Evaluation and the District requesting a due process hearing after Plaintiff refused to consent to the Evaluation. Dkt. 8 at p. 5. Neither of these actions were adverse to Plaintiff. This Court has already ruled that the District "was procedurally required to complete an age-appropriate transition assessment if a new IEP is to be developed for Student," thus establishing that the cause of the District's action was its obligation to comply with the requirements of the IDEA – not the Plaintiff's exercise of her rights. Additionally, the IDEA explicitly authorizes a school district to request a due process hearing to pursue an initial evaluation of a student for special education services when a parent refuses to consent. 20 U.S.C. § 1414(a)(1)(D)(ii). This Court has already found that the District appropriately requested a due process hearing for this purpose.

Because Plaintiff's complaint fails to establish any facts showing she was subjected to an adverse action, or any causal connection between an adverse action and her exercise of rights under the ADA and Section 504, the undersigned recommends that the Court grant the District's motion for judgment on the pleadings on Plaintiff's retaliation claim.

D.   Amendment

Motions for judgment on the pleadings under Rule (c) and motions to dismiss for failure to state a claim under Rule 12(b)(6) are "functionally identical," *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989), and in 12(b)(6) dismissals, leave to amend should be granted even if no request is made unless amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir.1990).

Plaintiff's pleadings cannot possibly be cured by the allegation of other facts because, as discussed above, there is no basis to establish that the District violated Plaintiff's rights. Plaintiff does not deny that she revoked her consent for Student to receive special education services and it was this revocation – not any action by the District – that caused the loss of services to Student. This Court has already determined that the District did not act improperly in seeking administrative review of Plaintiff's refusal to consent and that the District offered Student a FAPE and appropriately attempted to begin the special education process anew after Plaintiff requested reinstatement of special education services. *See* 34 C.F.R. § 104.33(b) ("Implementation of an Individualized Education Program developed in accordance with the [IDEA] is one means of meeting the standard" of Section 504).

The Court agrees that Plaintiff should not be allowed to revoke her consent under the IDEA and then recast her grievances as ADA and Section 504 claims. While the IDEA does not "restrict or limit the rights, procedures, and remedies available" under other federal law, it does require a claimant to exhaust administrative remedies. 20 U.S.C. § 1415(f). When that process produces an administrative decision that is upheld on judicial review under IDEA, principles of issue and claim preclusion may properly be applied to short-circuit redundant claims under other laws. *See University of Tenn. v. Elliott*, 478 U.S. 788, 796–99, 106 S.Ct. 3220, 3224–27, 92

L.Ed.2d 635 (1986); *see also*, *Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 297 (5th Cir. 2005) (While the IDEA does not foreclose claims under the ADA and § 504, so long as they are factually and legally distinct from an IDEA claim, the general principles of issue preclusion may be applied to preclude any redundancies.) Because Plaintiff's claims under the ADA and Section 504 are factually and legally indistinct from her failed IDEA claims, the undersigned recommends that the Court enter judgment on the pleadings in favor of the District.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **April 13, 2022**. The Clerk should note the matter for **April 15, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed ten (10) pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of March, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge